In re Charles V. ROBERTS and Evelyn J. Roberts, Debtors.

FRANCHISE TAX BOARD, of the State of California, Appellant,

v.

Charles V. ROBERTS and Evelyn J. Roberts, Appellees.

BAP No. CC–93–1250–VHB.

Bankruptcy No. LA 87–53563.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 21, 1994.

Decided Dec. 9, 1994.

Diane Spencer Shaw, Los Angeles, CA, for appellant.

Bradford E. Henschel, Los Angeles, CA, for appellees.

Before VOLINN, HAGAN and BRANDT,[1] Bankruptcy Judges.

---

*OPINION*

VOLINN, Bankruptcy Judge:

## OVERVIEW

The Franchise Tax Board of the State of California (the FTB) continued to receive money from a wage garnishment of the debtors after receiving notice of the debtors' Chapter 13 bankruptcy and instigated other proceedings against the debtors for a period of some five years. On motion by the debtors, the court assessed against the FTB the debtors' attorney's fees and costs pursuant to 11 U.S.C. § 362(h), and continued the hearing pending submission of a billing statement, which was served on counsel for the FTB. Although given sufficient time prior to the hearing on the attorney fees to respond, FTB made no objection to the amount requested by debtors' counsel for attorney fees. On appeal, FTB raises an issue for the first time as to the reasonableness of the debtors' attorney's fees. We affirm the bankruptcy court order allowing the fee requested.

## FACTS AND PROCEEDINGS BELOW

In March of 1986, the FTB issued a garnishment in the form of an "Earnings Withholding Order for Taxes" to debtor Charles V. Roberts' employer, the Los Angeles County Sanitation District. On July 10, 1987, Charles V. Roberts and his wife Evelyn J. Roberts filed a Chapter 13 bankruptcy petition. The FTB received notice of the bankruptcy on July 30, 1987. The FTB did nothing to stop the wage garnishment, and accepted three further payments from the Sanitation District after July 10 totalling $2,426.74. On November 10, 1987, the bankruptcy court issued to the District an "Order to Employer to Deduct and Remit." On receipt of the order, the District notified the FTB that it would no longer honor the garnishment. In response, the FTB withdrew its garnishment order.

The FTB filed a proof of claim in the bankruptcy case. At some point, it refunded to the debtors the three payments received after filing of the case.

---

1. Hon. Philip H. Brandt, Bankruptcy Judge for the Western District of Washington, sitting by designation.

For an undisclosed reason, the debtors' case was dismissed on September 27, 1990. Debtors' counsel successfully moved the court to set aside the order of dismissal. During the hiatus, however, and acting in reliance on the notice of dismissal, the FTB issued another garnishment order on December 12, 1990. After notification that the dismissal had been set aside, the FTB withdrew this order on January 7, 1991 without having collected any monies.

During a series of hearings and discussions between the parties regarding the FTB's proof of claim, the debtors' tax liabilities were significantly reduced based on personal tax returns filed by the debtors on March 29, 1991. As a result of reassessments, and due to the previous collection activities of the FTB, the debtors' total tax liability was reduced to $4,882.30.

On May 8, 1991, the FTB issued a Notice of Tax Change, which informed the debtors that a refund of $48 due for the 1990 tax year had been credited to their outstanding liability for other years.

Then, on October 8, 1991, the FTB garnished the debtors' account with Security Pacific National Bank, claiming a balance due of $22,780.49. On October 16, Security Pacific honored the garnishment and notified the debtors that it had applied $424.72 of their account to the FTB levy. Debtors notified their counsel of the foregoing events, who in turn demanded withdrawal of the garnishment from the FTB, to which the FTB acceded on October 21.

Undeterred, on October 29, 1991, the FTB issued to the debtors a State Income Tax Final Notice Before Levy for the 1982 tax year. The FTB stated that it issued the Final Notice due to the debtors' lack of response to three prior notices. This came about because the debtors had used an incorrect social security number when filing their 1982 return, with the result that the return was not directed to the debtors' account. After further communication with the debt-ors, the FTB corrected the problem on November 19, 1991.

On April 23, 1992, the debtors filed a motion pursuant to § 362(h) to hold the FTB in contempt for willful violation of the automatic stay.[2] The FTB filed an opposition to the motion on September 24, 1992. The debtors replied to the opposition on October 30, 1992. Because the reply had not been properly tabbed and paginated, the debtors refiled it.

On September 26, 1992, two days after filing its opposition to the debtors' contempt motion, the FTB issued a refund to the debtors for the 1980 tax year, withholding however a sum of $414 which it remitted to the Internal Revenue Service pursuant to a claim filed with the FTB by the IRS prior to the bankruptcy, some five years before.

The court heard the debtors' motion on December 15, 1992. The court held the FTB in willful violation of the automatic stay, awarded attorney fees and costs to the debtors, and instructed the debtors' counsel to submit his billings. The debtors' counsel submitted a declaration appending his fees and costs on January 7, 1993, and served a copy of it on the FTB the same day. The FTB did not file an objection to the fees.

The court held a final hearing on the matter on January 26, 1993. The debtors' proposed order asked for $10,752.50 for attorney fees and costs, $414.80 for the improper offset to the IRS of the debtors' 1980 tax refund, $48 improperly withheld from the debtors' 1990 tax refund, and $25,000 or an amount in blank as sanctions. At the hearing, the court inquired whether the FTB had filed any objection to the amount stated for fees and costs. Following a negative reply by the FTB, the court awarded the debtors $10,000. The court declined to award any further amounts as sanctions.

## ISSUES PRESENTED

1. Whether the FTB actions constitute a willful violation of the automatic stay.

2. Whether the court abused its discretion by awarding the debtors $10,000 for

---

**2.** Section 362(h) states:
   An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

their attorney's fees and costs as compensatory damages caused by the FTB's actions.

## STANDARD OF REVIEW

■ Whether the FTB willfully violated the automatic stay is a question of fact to be reviewed under the clearly erroneous standard of Fed.R.Bankr.P. 8013. The court's sanction for willful violation of the automatic stay is reviewed for an abuse of discretion. *In re Bradford,* 112 B.R. 347, 351 (9th Cir. BAP 1990).

## DISCUSSION

1. *The FTB willfully violated the automatic stay.*

■ The filing of a bankruptcy petition under the Bankruptcy Code:

(a) . . . operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

. . . .

11 U.S.C. § 362.

The legislative history of this section states:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

Notes of the Committee on the Judiciary, H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–41 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97.

■ The reach of the automatic stay is broad. It prohibits any act taken against the debtor or to recover a claim against the debtor. The stay requires the creditor to maintain the status quo ante and to remediate acts taken in ignorance of the stay. *In re Miller,* 10 B.R. 778 (Bankr.D.Md.1981) (although repossession of debtor's automobile in ignorance of the stay did not constitute willful violation of the stay, refusal to return the automobile upon notification of the bankruptcy constituted a continuing violation of the stay). The FTB unqualifiedly admits to only two instances of intentional conduct: the improper withholding of $48 due the debtors from one tax year as credit for another year and the improper offset of $414 paid to the IRS. In addition, although the FTB denies the legal effect of the action, it admits that it received three postpetition payments from debtor Charles Roberts' employer. The FTB received these payments on its prepetition garnishment after receiving notice of the bankruptcy and continued to hold these payments for over four months.

■ The FTB excuses these actions by stating that it took no action other than to accept the payments from the employer, and that it ultimately returned the payments to the debtors with interest. However, cases widely agree that a garnishing creditor has an affirmative duty to stop garnishment proceedings when notified of the automatic stay. *In re Dungey,* 99 B.R. 814 (Bankr.S.D.Ohio 1989); *In re Mitchell,* 66 B.R. 73 (Bankr.S.D. Ohio 1986); *In re O'Connor,* 42 B.R. 390 (Bankr.E.D.Ark.1984) (creditor cannot take default judgment against debtor's employer after filing); *In re Dennis,* 17 B.R. 558

(Bankr.M.D.Ga.1982) (creditor has duty to dismiss garnishment proceedings instituted postpetition); *In re Elder,* 12 B.R. 491, 494 (Bankr.M.D.Ga.1981) (creditor has affirmative duty to stop "downhill snowballing of a continuing garnishment").

■ The FTB excuses its other efforts to levy on the debtors by stating that such efforts ceased before any money was collected. This reasoning fails to consider that initiation of the activity is contrary to § 362(a). The FTB's only excusable act appears to be its initiation of the second garnishment proceeding that was based on receipt of the notice of dismissal of the case. However, once it had received notice of the reinstatement of the case, the FTB improperly: 1) offset the debtors' tax refund; 2) instituted a third garnishment; 3) sent the debtors a final notice before levy; and 4) during the pendency of the debtors' contempt motion, paid over sums due the debtors to the IRS.

The FTB blames much of this activity on its computer, which apparently is not programmed to observe the automatic stay.[3] The FTB defines these acts as "inadvertent" and contends that they do not constitute willful violation of the stay. The FTB's cases do not support its position. In *In re Conti,* 42 B.R. 122 (Bankr.E.D.Va.1984), the IRS refunded sums upon notice by the debtor's attorney. Although the court held the IRS was not liable for punitive damages, it nevertheless held it liable for the debtor's attorney fees and costs. *Id.* at 127–28. In *In re Augustino Enterprises,* 13 B.R. 210 (Bankr. D.Mass.1981), the creditor did not receive actual notice of the bankruptcy until it was too late to undo the effect of its violative act. In *In re Stuber,* 142 B.R. 435 (Bankr.D.Kan. 1992), the creditor was not sanctioned where the debtor testified that it incurred no damages by the creditor's technical violation of the stay.

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir. 1992) (citation omitted).

■ The term "inadvertent" is used to mean acts taken without knowledge of the existence of the stay. *In re Abrams,* 127 B.R. 239 (9th Cir. BAP 1991). In *Abrams,* repossession of property without actual knowledge of the stay was inadvertent, and therefore not sanctionable. However, the creditor's refusal to return the property after receiving notice of the stay constituted willful, and thus, sanctionable conduct under § 362(h).

The FTB knew of the debtors' bankruptcy filing, and its continued collection efforts actions thereafter required the debtors to expend resources to ward off and remedy the effect of these actions. The trial court did not err by concluding that the debtors were entitled to compensation pursuant to § 362(h). The court's finding that the FTB willfully violated the stay is not clearly erroneous. Its finding as to attorney fees and costs, as discussed more fully below, was based on a documented statement by counsel, and likewise is not clearly erroneous.

■ As to sanctions, while § 362(h) requires the imposition of actual damages, the court acted within its discretion to deny the debtors' request for additional punitive damages. We do not find that this discretion was abused.

*2. Appeal of the amount of attorney fees is frivolous.*

■ The FTB raised no objection to the reasonableness of counsel's fees and costs below. "It is a well-established principle that in most instances an appellant may not present arguments in the Court of Appeals

---

**3.** The FTB blames the State Income Tax Final Notice Before Levy issued on October 29, 1991 on the debtors' use of an incorrect social security number on their 1982 tax return, which apparently resulted in the FTB failing to credit the debtors' account. The FTB has acknowledged, however, that one of its employees was personally monitoring the debtors' tax situation at that time. In any event, the FTB's excuse does not explain how it would be permissible to issue such a notice to debtors in bankruptcy.

that it did not properly raise below." *Rothman v. Hospital Service of Southern California*, 510 F.2d 956, 960 (9th Cir.1975). "Nevertheless, no 'bright line rule' exists to determine whether a matter has been properly raised below. A workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir.1992) (internal quotations omitted).

"Our general rule is that we will not consider issues raised for the first time on appeal." *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990). A reviewing court "may consider an issue raised for the first time on appeal if (1) there are 'exceptional circumstances' why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Id.*

■ A reviewing court may consent to consider a pure question of law when it does not affect or rely upon the factual record developed by the parties, or where the pertinent record has been fully developed. *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir.1978). "The evident principle underlying this exception is that the party against whom the issue is raised must not be prejudiced by it. Thus, if he might have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue, it should not be permitted to be raised for the first time on appeal." *Id.*

On appeal, the FTB makes no attempt to overcome the general rule precluding the Panel's review of the reasonableness of the attorney fees awarded, and in any event, the circumstances excepted from application of the general rule are not presented here. No exceptional circumstances existed which prevented the FTB from raising objections to the fees below, nor is this issue one which arose during the pendency of this appeal.

The issues raised by the FTB on appeal are questions of fact, not law, and the record it has presented is not completely developed.

■ The FTB has devised a spurious distinction between work performed by debtors' counsel relative to the contempt motion and work performed prior to the motion in response to the FTB's various actions and levies against the debtors. The FTB asserts that it should be charged only for fees incurred from the commencement of work on the motion. No explanation is offered to support this assertion, nor can we perceive one. A review of counsel's billing indicates that all work on which the award of damages was based related to the debtors' transactions with the FTB. Debtors are entitled to compensation for damages caused by the FTB's willful violation, not merely for the cost incurred in applying for the order.

A second element in the FTB's objection is that only effective work should be compensated. A hearing on June 2, 1992 was rescheduled on the court's initiative, and the FTB asserts it should not be charged for counsel's appearance at that hearing. On another occasion, counsel had to resubmit papers that were not correctly tabbed and paginated. The FTB contends it should not be charged $225 for preparation of the exhibits, but debtors' counsel does not appear to have charged for resubmission of the exhibits, and appellant's brief fails to explain why this work should not be compensable.

■ The frivolous nature of the FTB's appeal of this issue is exemplified by one particular objection. The FTB argues that it should not have to reimburse the debtors for counsel's parking expense for the June 2 hearing continued by the court, and asks that counsel's fee award be reduced by $6. The Roberts have asked for their attorney's fees on appeal. We may award them, together with single or double costs pursuant to Fed. R.App.P. 38, which is incorporated into our own rules of procedure through BAP Rule 13. *In re Hedges*, 32 F.3d 1360, 1364 (9th Cir.1994); *In re Burkhart*, 84 B.R. 658, 661 (9th Cir. BAP 1988).[4]

---

4. *Hedges* may have implicitly suggested that our    authority to apply sanctions now arises under

### CONCLUSION

■ The debtors have moved the Panel for an order requiring the FTB to reprogram its computer to prevent further violations of the stay and for an additional $100,000 in sanctions. While the behavior of the FTB throughout this bankruptcy—its unwarranted violations of the stay, its response to the debtors' motion below, and its appeal from the order—reflect an obtuse attitude toward the effect of the automatic stay and the jurisdiction of the bankruptcy court over the activities of creditors of the debtor, we do not find that the FTB's conduct of this appeal warrants the application of such sanctions. We affirm the bankruptcy court and remand these proceedings for determination of the debtors' fees and costs on this frivolous appeal, which we award as damages.

AFFIRMED and REMANDED.

Fed.R.Bankr.P. 9011 rather than FRAP 38, *see, In re Harvey,* 172 B.R. 314 (9th Cir. BAP 1994). The two rules are not mutually exclusive or in conflict. Matters of practice are governed under Fed.R.Bankr.P. 8001 et seq. As there is no equivalent rule to FRAP 38 in Part VIII, and as BAP Rule 13 states clearly, we may apply FRAP 38.