In re LPM CORPORATION, Debtor.

**Kir Temecula, L.P., Appellant,**

v.

**LPM Corporation; Minson Corporation; North County Bank; Gerald H. Davis, Ch. 7 Trustee; United States Trustee, Appellees.**

BAP No. SC–00–1648–RyKMa. Bankruptcy No. 00–00742–A7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 22, 2001.

Filed July 27, 2001.

George B. Blackmar, Blackmar, Principe & Schmelter, San Diego, CA, for Kir Temecula, L.P.

Gary B. Rudolph, Sparber, Ferguson, Ponder & Ryan, San Diego, CA, for Gerald H. Davis, Trustee.

Before RYAN, KLEIN, and MARLAR, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After LPM Corporation, dba La Jolla Patio & Mattress ("Debtor"), filed a chapter 11[1] petition, Debtor failed to make timely payments of postpetition rent. Later, the bankruptcy court deemed Debtor's lease with Kir Temecula L.P. ("Kir Temecula") rejected and ordered Debtor to (1) surrender the leased premises and (2) pay Kir Temecula $43,529.08 within two weeks (the "Rejection Order").

When Debtor failed to timely pay, Kir Temecula obtained a writ of execution from the bankruptcy court. Kir Temecula then served a notice of levy on North County Bank (the "Bank"), where Debtor had its debtor-in-possession account (the "Account"). Before the levy was completed, Debtor converted its case to chapter 7, and the Bank froze the Account.

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Kir Temecula filed a motion to compel the Bank to turn over funds to satisfy the levy (the "Motion"). After a hearing, the bankruptcy court (1) denied Kir Temecula's request for immediate turnover of funds, (2) denied Kir Temecula superpriority status as a chapter 11 administrative claimant, and (3) determined that Kir Temecula should be paid pro rata on its claim like other chapter 11 administrative claimants (the "Order"). Kir Temecula timely appealed.

We AFFIRM.

## I. FACTS

The relevant facts in this case are undisputed. Prior to filing its petition, Debtor operated approximately forty retail stores in Southern California. Debtor and Kir Temecula entered into a lease (the "Lease") for store space in Temecula, California. On January 26, 2000, Debtor filed its chapter 11 petition. During the first two months, Debtor failed to timely pay most of its landlords, including Kir Temecula. Thereafter, Kir Temecula filed a motion to compel Debtor to timely pay postpetition lease payments or, alternatively, to reject the Lease (the "Rejection Motion"). Because of Debtor's failing financial situation, by stipulation with the creditors committee, Richard Kipperman was appointed to manage Debtor's affairs.

After an unopposed hearing, the bankruptcy court entered the Rejection Order.

Debtor then paid $10,000 to Kir Temecula, leaving a balance of $33,529.08. Debtor then filed a motion for partial relief from the Rejection Order under Federal Rule of Civil Procedure ("FRCP") 60(b)(1) (the "Relief Motion").[2] In the Relief Motion, Debtor argued that because a change in circumstances had rendered it administratively insolvent, it should be relieved from the Rejection Order.

Kir Temecula then filed a request for a writ of execution,[3] and served a notice of levy on Debtor and the Bank.[4] On June 22, 2000, the bankruptcy court granted Debtor's motion to convert before the levy was completed.[5] After receiving notice of the conversion, the Bank froze the Account.

On July 21, 2000, Kir Temecula filed the Motion. After a hearing, the bankruptcy court issued a written decision.[6] On October 30, 2000, the Order was entered, and Kir Temecula timely appealed.

## II. ISSUES

A. Whether the bankruptcy court erred in denying the Motion because Kir Temecula did not have relief from the automatic stay to levy on the Account.

B. Whether the bankruptcy court erred in denying the Motion because Kir Temecula did not have priority over other administrative claimants.

---

**2.** FRCP 60 is incorporated into Rule 9024. See FED. R. BANKR. P. 9024.

**3.** It is not disputed that Kir Temecula did not seek relief from the automatic stay before requesting the writ of execution.

**4.** "A levy on property under a writ of execution creates an execution lien on the property from the time of levy until the expiration of two years after the date of issuance of the writ unless the judgment is sooner satisfied." CAL. CIV. PROC. CODE § 697.710. Under California law, a levy only entitles the attaching party to the property after a final judgment is entered. See Ward v. Comm'r, 224 F.2d 547, 551 (9th Cir.1955).

**5.** As a result, the Relief Motion was taken off calendar.

**6.** The bankruptcy court published its decision. See In re LPM Corp., 253 B.R. 914 (Bankr. S.D.Cal.2000).

## 220

### III. STANDARD OF REVIEW

 We review *de novo* whether the automatic stay provisions of § 362 have been violated. *See California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1150 (9th Cir. 1996). Similarly, we review *de novo* the bankruptcy court's interpretation of the Code and the Rules. *See Tighe v. Celebrity Home Entm't, Inc. (In re Celebrity Home Entm't, Inc.)*, 210 F.3d 995, 997 (9th Cir.2000) (Code); *State Bd. of Equalization of Cal. v. Los Angeles Int'l Airport Hotel Assocs. (In re Los Angeles Int'l Airport Hotel Assocs.)*, 106 F.3d 1479, 1480 (9th Cir.1997) (Rules).

### IV. DISCUSSION

A. *The Bankruptcy Court Did Not Err In Denying The Motion Because Kir Temecula Did Not Have Relief From The Automatic Stay To Levy On The Account.*

The bankruptcy court held that the automatic stay prevented Kir Temecula from levying on the Account because it was property of the estate. On appeal, Kir Temecula argues that the bankruptcy court erred because it followed Rules 9014 and 7069, which provide a procedure for obtaining a writ of execution to enforce a judgment. Kir Temecula further argues that because it followed these enforcement procedures in enforcing the Rejection Order, the automatic stay is inapplicable. We disagree.

Section 362 of the Code provides an automatic stay which prohibits collection activities. Section 362 provides, in pertinent part, that

> [e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

. . . .

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(3). The Code defines property of the estate broadly.

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a).

 The automatic stay is self-executing and is effective upon the filing of a petition. *See Gruntz v. Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000). This injunction is an order of the bankruptcy court and prohibits collection activities against property of the estate. *Id.*

 The automatic stay protects property of the estate until (1) it is no longer property of the estate or (2) the bankruptcy proceeding is closed, dismissed, or a debtor's discharge is either granted or denied. *See* 11 U.S.C. § 362(c). However, if cause exists, the bankruptcy court may lift

the automatic stay as to a particular piece of property. *See* 11 U.S.C. § 362(d).

In *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339 (9th Cir. BAP 1994), the California Franchise Tax Board continued to enforce a prepetition garnishment against a debtor's wages despite receiving notice of debtor's bankruptcy. *Id.* at 342. We held that continuing to levy on debtor's wages constituted a willful violation of the automatic stay. *Id.* at 344.

Here, Kir Temecula does not contest that the Account is property of the estate. Moreover, the Rejection Order did not lift the automatic stay as to the Account. Therefore, the Account remained subject to the automatic stay unless somehow Kir Temecula's actions are deemed the equivalent of an exception to the automatic stay.[7]

■ Kir Temecula asserts that Rules 9014[8] and 7069[9] provide a mechanism for

obtaining a money judgment in a contested matter and a writ of execution to enforce that judgment. Rule 7054 defines a judgement to include any "decree or any order from which an appeal lies." FED. R. BANKR. P. 7054(a). Because the Rejection Order could have been appealed, it is a judgment within the meaning of the Rules. However, nothing in these Rules excepts enforcement proceedings from the automatic stay.

■ Section 362(a)(3) protects property of the estate from *any* act to obtain possession unless a specific exception to the automatic stay applies under § 362(b). *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 590 (9th Cir. 1993) (the automatic stay applies unless an applicable exception exists). If Congress intended enforcement of a postpetition

---

7. We note that if the levy violated the automatic stay, it is deemed void. *See Gruntz*, 202 F.3d at 1082.

8. Rule 9014 provides that

 [i]n a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The clerk shall give notice to the parties of the entry of any order directing that additional rules of Part VII are applicable or that certain the rules of Part VII are not applicable.

 The notice shall be given within such time as is necessary to afford the parties a reasonable opportunity to comply with the procedures made applicable by the order. FED. R. BANKR. P. 9014.

9. Rule 7069 incorporates FRCP 69 by reference. FRCP 69 provides in pertinent part that the

 [p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held. FED. R. BANKR. P. 7069(a).

money judgment to be excepted from the automatic stay, then it would have provided for such an exception under § 362(b). However, it did not.

■ The Ninth Circuit is clear, "[e]xceptions to the automatic stay should be read narrowly," and "[t]he precise wording of the stay and its exceptions should be emphasized." *Id.* at 590. If we accept Kir Temecula's argument, we would inappropriately create a conflict between the Code and the Rules and subordinate the Code to the Rules. *See Capobianco v. Trew (In re Capobianco)*, 248 B.R. 833, 837 (9th Cir. BAP 2000) (where a conflict between the Code and the Rules exists, the Code controls).

Furthermore, the Code and the Rules provide an easy and appropriate way for an administrative claimant like Kir Temecula to proceed. If the claimant gets a money judgment from the bankruptcy court and the debtor does not pay, it can bring a motion to compel payment. If the administrative claimant wants to proceed against specific property of the estate, then it may request relief from the automatic stay and then utilize the process set forth in Rule 7069.

Kir Temecula, however, argues that this process makes no sense. In other words, because it had a money judgment, it argues that it should therefore be able to proceed at its discretion under Rule 7069 against property of the estate. However, this interpretation could create havoc for a debtor attempting to reorganize. For this reason among others, Congress stayed such actions and required creditors to proceed in an orderly way by requesting relief from the automatic stay. *See Dean v. Trans World Airlines, Inc.*, 72 F.3d 754,

755 (9th Cir.1995) (recognizing that the automatic stay serves two purposes: 1) it grants the debtor breathing room and provides time to attempt reorganization, and 2) it prevents creditors from racing to the courthouse in an attempt to drain the debtor's assets). Although Kir Temecula might view the need to get an additional order as a waste of time, the Code jealously protects the process by which a creditor proceeds against property of the estate as fundamental and absolute. *See Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir.1992).

We agree with the bankruptcy court that the automatic stay applied here, and by failing to request appropriate relief from the stay, Kir Temecula was not entitled to proceed against the Account.

Accordingly, the bankruptcy court did not err in determining that the automatic stay prevented Kir Temecula from levying on the Account.

B. *The Bankruptcy Court Did Not Err In Denying The Motion Because Kir Temecula Did Not Have Priority Over Other Administrative Claimants.*[10]

The bankruptcy court determined that Kir Temecula's administrative claim was not entitled to priority over either chapter 7 or other chapter 11 administrative claims. On appeal, Kir Temecula contends that the Rejection Order entitled it to payment from the Account funds. We disagree.

■ Section 365(d)(3) provides that [t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under

---

**10.** On May 24, 2000, the parties filed a stipulation to supplement the Record. The stipulation added numerous orders to the Record that were entered after the Order. We denied the stipulation.

any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3). Under this provision, commercial rent must be timely paid as an administrative expense. *See Cukierman v. Uecker (In re Cukierman)*, 242 B.R. 486, 489 (9th Cir. BAP 1999). However, after a case is converted from chapter 11 to chapter 7, the administrative expenses of the chapter 7 estate have priority over chapter 11 administrative expenses. *See* 11 U.S.C. § 726(b).

In *Great W. Sav. Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724 (9th Cir. BAP 1989), the debtor failed to make timely rent payments required by § 365(d)(3), and the debtor's bankruptcy estate was administratively insolvent. *Id.* at 725–26. The landlord sought superpriority for its administrative claims for rent. We held that under § 365(d)(3) the estate was only liable for the fair market value of the lease and that the landlord's administrative claim was not entitled to superpriority status. *Id.* at 727–28.

In *Towers v. Chickering (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir.1994), the Ninth Circuit addressed whether a debtor is liable for the contract rate or merely the fair market value of the lease. *Id.* The Ninth Circuit rejected our holding in *Orvco* and held that the debtor is liable for the contract rate. However, the debtor's estate was not administratively insolvent, and the Ninth Circuit noted "that we have not been asked to decide, nor do we express any opinion, on whether amounts which a trustee fails to pay under section 365(d)(3) are entitled to 'super-priority' status." *Id.* at 405.

Therefore, we are still bound by *Orvco's* holding that an administrative claim under § 365(d)(3) does not entitle a landlord to superpriority status if the estate is administratively insolvent. In *Orvco* we stated that

[a]lthough section 365(d)(3) calls for timely performance of the debtor's lease obligations, there is no indication that Congress intended to grant landlords some type of super-priority status. Accordingly, most courts addressing the issue have held that where there are insufficient funds in the estate to satisfy all administrative claims, a landlord is only entitled to its pro rata share with the other allowed administrative claimants. Had Congress intended to create a super-priority for subsection 365(d)(3) it would have done so by express statutory language.

*Orvco*, 95 B.R. at 728 (quotation marks and citations omitted). In reaching this conclusion, we approvingly cited *In re Tandem Group, Inc.*, 61 B.R. 738 (Bankr. C.D.Cal.1986).

In *Tandem*, a chapter 11 debtor failed to make timely rent payments, and the lease was deemed rejected by § 365(d). After the debtor converted its case to chapter 7, the landlord filed a proof of claim, and the chapter 7 trustee objected because it was unclear whether the estate was administratively insolvent. The landlord argued that its claim was entitled to superpriority status because of § 365(d)(3), and the court rejected this argument. *Id.* at 742.

Additionally, were we to grant superpriority status to Kir Temecula, we would place §§ 365(d)(3) and 726(b)[11] in conflict, and in so doing, violate a cardinal rule of statutory construction. *See Russell, Jarvis, Estabrook & Dashiell v. Kaveney (In re Kaveney)*, 60 B.R. 34, 36 (9th Cir. BAP 1985); *see also Tandem*, 61 B.R. at 741–42 (noting that granting priority to chapter 11 administrative rent claims conflicts with the plain language of § 726(b)). Nothing in the language of § 365(d)(3) grants a commercial landlord's administrative claim superpriority status. Rather, it simply imposes a duty on a debtor to make its rental payments in a timely manner. Remedies for the breach of this provision are left to the discretion of the court in accordance with other provisions of the Code and the Rules. Section 726(b), on the other hand, is specific in its requirement that chapter 7 administrative claims shall have priority over chapter 11 administrative claims where the debtor is administratively insolvent. We therefore interpret §§ 365(d)(3) and 726(b) in logical harmony, which requires that Kir Temecula be paid subject to § 726(b).

Here, the bankruptcy court denied Kir Temecula superpriority status. In reaching its conclusion, the bankruptcy court noted that

> Kir Temecula would likely be satisfied with an order directing immediate payment from any of the estate's assets. Because there may be insufficient assets to fully pay chapter 7 administrative

creditors, this would give Kir Temecula superpriority over the chapter 7 administrative creditors even though § 726(b) mandates the chapter 7 administrative creditors must be paid first.

Appellant's ER, at 450; Memorandum Decision (Sept. 29, 2000), at 6. Therefore, we agree with the bankruptcy court that the funds in the Account must first go to pay chapter 7 administrative claims, and to the extent that there are excess funds, Kir Temecula should share pro rata with other chapter 11 administrative claimants.

Accordingly, the bankruptcy court did not err in determining that Kir Temecula was not entitled to superpriority status.

## V. CONCLUSION

In sum, the bankruptcy court did not err in determining that the automatic stay prevented Kir Temecula from levying on the Account and having its chapter 11 administrative claim paid ahead of chapter 7 administrative claims.

Also, the bankruptcy court did not err in determining that Kir Temecula's administrative claim was not entitled to superpriority status.

AFFIRMED.

---

11. Section 726 provides in pertinent part that [p]ayment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1009, 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726(b).