

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CENSO, LLC,<br><br>      Debtor. | BAP No. NV-21-1125-LTF<br><br>Bk. No. 2:19-bk-16636-MKN |
| CENSO, LLC,<br>     Appellant,<br>v.<br>NEWREZ, LLC, dba Shellpoint Mortgage<br>Servicing; BANK OF AMERICA, N.A.;<br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br>     Appellees. | Adv. No. 2:20-ap-01077-MKN<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Mike K. Nakagawa, Bankruptcy Judge, Presiding

APPEARANCES:

Christopher P. Burke argued for appellant; Natalie L. Winslow of Akerman
LLP argued for appellees NewRez, LLC and Federal National Mortgage
Association; Ramir M. Hernandez of Wright, Finlay & Zak, LLP appeared
for appellee Bank of America, N.A.

Before: LAFFERTY, TAYLOR and FARIS, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

Chapter 11[1] debtor Censo, LLC ("Censo") filed an adversary proceeding against appellees NewRez, LLC dba Shellpoint Mortgage Servicing ("Shellpoint"), Bank of America ("BANA"), and Federal National Mortgage Association ("Fannie Mae"), seeking a declaration that the deed of trust encumbering Censo's property was invalid due to errors in the document. Shellpoint, joined by BANA and Fannie Mae, moved to dismiss the complaint under Civil Rule 12(b)(6), applicable via Rule 7012. The motion asserted that the claims in the adversary proceeding were barred by claim preclusion based on an order entered in litigation in the United States District Court finding that Censo's predecessor-in-interest had taken title to the property subject to Fannie Mae's senior lien. The bankruptcy court agreed. It also found that the alleged defects in the deed of trust were not legally sufficient to invalidate the document under Nevada law, but it declined to grant leave to amend because of its claim preclusion finding.

On appeal, Censo argues for the first time that the district court's order, which was entered post-petition, is void as a violation of the automatic stay. We disagree and AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS[2]

### A.    Pre-Petition Events

In December 2009, James Pengilly borrowed $414,000 from BANA. He executed a promissory note secured by a deed of trust in favor of BANA encumbering a condominium unit located on Allerton Park Drive in Las Vegas, Nevada (the "Property"). The loan is currently owned by Fannie Mae and serviced by Shellpoint; Shellpoint is the assignee of the deed of trust.

In 2013, Mr. Pengilly defaulted on his homeowners association ("HOA") assessments, and the HOA initiated foreclosure proceedings. Ke Aloha Holdings, LLC ("KAH") purchased the property at the foreclosure sale in December 2013 and transferred the Property to Ke Aloha Holdings Series II, LLC ("KAH II") a year later. KAH II transferred the Property to Censo in January 2019. KAH, KAH II, and Censo are all managed by Melani Schulte.

In the meantime, in 2014, Mr. Pengilly sued the HOA board members, KAH, and others in state court, seeking to quiet title to the Property and to obtain declaratory relief that the foreclosure sale was

---

[2] Where necessary, we have exercised our discretion to take judicial notice of the dockets and imaged papers filed in debtor's bankruptcy case, the related adversary proceeding, and District Court Case No. 2:14-cv-01463-RFB-NJK. *See O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989) (appellate court may take judicial notice of bankruptcy records); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (appellate court may take judicial notice of proceedings in other state or federal courts if those

3

unlawful. KAH filed an answer, counterclaims against Mr. Pengilly, and cross-claims against Mr. Pengilly and Amanda M. Pengilly, as trustees of the James W. Pengilly Trust, BANA, the Internal Revenue Service, and Green Tree Servicing, LLC ("Green Tree"), which at that time was the servicer of the note and the beneficiary under the deed of trust. The cross-claims were for quiet title and declaratory relief that the HOA sale extinguished the deed of trust. After the case was removed to the United States District Court for the District of Nevada, Green Tree filed an answer to KAH's cross-complaint and a counterclaim against KAH for quiet title and declaratory relief that its lien was not affected by the foreclosure. In May 2019, Ditech Financial LLC f/k/a Green Tree Servicing, LLC ("Ditech") moved for summary judgment on its counterclaims.

## B.     Bankruptcy events

Censo filed a chapter 11 petition in October 2019. Shortly thereafter, the district court entered an order granting Ditech's motion for summary judgment, declaring that KAH had taken title to the Property subject to Fannie Mae's senior lien ("the "DC Order").

In July 2020, the bankruptcy court granted in part Shellpoint's motion for relief from stay to enforce its rights under its deed of trust. While that motion was pending, Censo filed an adversary proceeding against Shellpoint, BANA, and Fannie Mae. In its amended complaint, Censo

proceedings have a direct relation to matters at issue).

4

sought disallowance of Shellpoint's secured claim based on errors in the deed of trust.

The relevant allegations of the amended complaint (as clarified by the exhibits to the complaint)[3] are summarized as follows:

1. KAH purchased the Property in December 2013 at an HOA foreclosure sale. Melani Schulte was a principal of both KAH and Censo. On December 31, 2014, KAH transferred title to KAH II. Censo is the current owner of the Property.

2. In October 2019, in a quiet title action brought by Mr. Pengilly, the United States District Court entered an order finding that KAH was the owner of the Property subject to a deed of trust held by Fannie Mae.

3. The deed of trust omits language regarding the HOA, West Charleston Lofts. The deed of trust also contains an incorrect address: the street number is listed as 1141, while the correct number is 11411. A reasonable inspection would not properly reference the Property because it is missing material language and has the wrong physical address.

---

[3] The exhibits are copies of the DC Order and several recorded documents affecting the Property. The bankruptcy court properly considered those exhibits in making its ruling without treating the motion to dismiss as a motion for summary judgment, based on its conclusion that the exhibits were integral to and explicitly relied on in the complaint, and no party objected to their authenticity or admissibility. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

5

4. Because of these issues, the deed of trust is unperfected, and Shellpoint's claim is unsecured.

5. Shellpoint has not substantiated that it is a real party-in-interest with respect to the Property.

Shellpoint moved to dismiss the amended complaint under Civil Rule 12(b)(6). Shellpoint argued that: (1) the relief sought by Censo was barred by claim preclusion,[4] based on the DC Order; and (2) the defects in the deed of trust did not invalidate it. BANA and Fannie Mae joined in the motion to dismiss.

Censo filed an opposition in which it contended that Shellpoint had not established all the elements of claim preclusion. Specifically, it argued that the parties were not the same because Ditech, not Shellpoint, was the servicer at the time of the foreclosure sale. It also argued that the claims were different because the district court action did not determine whether Shellpoint's claim should be allowed. Censo also alleged that it could not have brought its claims in the district court action because the deed of trust at issue was not disclosed until April 2019, just before the motion for summary judgment was filed in that action. Censo further asserted that the errors in the deed of trust were material. Finally, Censo argued that Shellpoint was not a real party-in-interest because it had not filed a claim

---

[4] Although the parties use the term "res judicata," we will use the term "claim preclusion," as encouraged by the Supreme Court. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 n.2 (9th Cir. 1988) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

or substantiated that it was the real party-in-interest with respect to the Property.

After a hearing, the bankruptcy court entered its order granting the motion to dismiss, finding that the elements for claim preclusion were present. The court also found that the complaint failed to allege a sufficient legal or factual basis for concluding that the defects in the deed of trust were sufficient to render it invalid. Because it found that Censo's claims were barred by claim preclusion, it denied leave to amend as futile. Censo timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Is the DC Order void as a violation of the automatic stay?

Did the bankruptcy court abuse its discretion in denying leave to amend?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss. *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc). The scope or applicability of the automatic stay under § 362 is also reviewed de novo. *Lehman Com. Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC)*, 423 B.R. 655, 663 (9th Cir. BAP 2009), *aff'd*, 654 F.3d 868 (9th Cir. 2011). Under de novo

7

review, we look at the matter anew, as if it had not been heard before, and as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

We review the bankruptcy court's dismissal of a complaint without leave to amend for abuse of discretion. *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1150 (9th Cir. 2016). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. Standard under Civil Rule 12(b)(6)

Under Civil Rule 12(b)(6), applicable in bankruptcy by Rule 7012, dismissal is proper if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While detailed factual allegations are not required, mere labels and conclusions or a formulaic recitation of the elements of a cause of action are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Federal claim preclusion standards

Claim preclusion prohibits lawsuits on any claims that were raised or could have been raised in a prior action. *Stewart v. U.S. Bancorp*, 297 F.3d

953, 956 (9th Cir. 2002). Claim preclusion under federal law applies when there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id.* (citation omitted). In the bankruptcy court, Censo argued that the first and third elements were not met, but it did not dispute that the DC Order was final and on the merits. On appeal, Censo has abandoned its arguments with respect to the first and third elements and focuses solely on its new argument, that the entry of the DC Order violated the automatic stay because it was entered post-petition and involved property of the estate. Thus, Censo argues, the second element is not met because the DC Order is void.

Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts. *In re E.R. Fegert, Inc.*, 887 F.2d at 957. We may, however, consider an issue raised for the first time on appeal if "(1) there are 'exceptional circumstances' why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 345 (9th Cir. BAP 1994) (*quoting United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990)). The question of whether the DC Order was void as a stay violation is a purely legal issue. Shellpoint argues that it is prejudiced because it was deprived of the opportunity to move for retroactive relief from stay, but it has addressed the issue in its briefing,

and even if we were to conclude that the stay was violated, Shellpoint could seek retroactive relief once this appeal is final.[5]

## C.    Entry of the DC Order did not violate the automatic stay.

Censo argues, with virtually no analysis, that the DC Order violated §§ 362(a)(1), (a)(3), (a)(4), and (a)(5) as the continuation of an action against the debtor, an act to exercise control over estate property, or an act to create, perfect, or enforce a lien against property of the estate or property of the debtor. We disagree.

"The automatic stay serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021). To that end, the stay protects the status quo by prohibiting certain acts affecting property of the debtor or the estate. *See id.* at 590.

---

[5] Shellpoint asserts several theories under which it contends Censo is barred from raising the stay violation issue on appeal because it was not raised in the bankruptcy court. But the doctrines asserted by Shellpoint (judicial estoppel, waiver, law of the case, ratification, and invited error) have no applicability in the automatic stay context. *See Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (9th Cir. BAP 2004) (because the automatic stay is effective against the world, regardless of notice, acts in violation of the stay are automatically void ab initio (citing *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572–74 (9th Cir. 1992))); *see also Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986) (debtor may neither unilaterally waive nor limit the scope of the automatic stay). *But see Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 B.R. 227, 231 n.8 (9th Cir. BAP 1998) (declining to consider debtors' argument that a fraudulent transfer complaint filed by the chapter 7 trustee in their corporate case violated the stay in their personal bankruptcy case because the argument was not raised in the bankruptcy court).

1. **The District Court's grant of summary judgment on Ditech's counterclaims did not violate § 362(a)(1) because those counterclaims were in substance a defense to KAH's cross-claims, which were simultaneously dismissed.**

Section 362(a)(1) provides that the filing of a bankruptcy petition operates as a stay of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

The plain language of this provision indicates that the stay applies only to actions **against the debtor**. *See also In re Palmdale Hills Prop., LLC,* 423 B.R. at 663-64 (automatic stay inapplicable to lawsuits initiated by the debtor, and a defendant in an action brought by the debtor may defend itself in that action without violating the automatic stay); *Gordon v. Whitmore (In re Merrick),* 175 B.R. 333, 336-38 (9th Cir. BAP 1994) (stay is inapplicable to post-petition defensive action in a pre-petition suit brought by the debtor, citing cases).

The cases holding that a creditor's defense of claims brought by a debtor do not violate the automatic stay typically involve facially defensive actions such as moving for summary judgment of dismissal of a complaint filed by a debtor. *See, e.g., In re Merrick,* 175 B.R. at 334. On the other hand, the commencement or continuation of a creditor's counterclaim for affirmative relief will generally be construed as a stay violation. *See Eisinger*

11

*v. Way (In re Way)*, 229 B.R. 11, 14 (9th Cir. BAP 1998) (because a counterclaim is an independent cause of action, relief from stay must be sought to continue its prosecution). The analysis is more complicated in multiple party/multiple claim litigation. In such litigation, "*who* filed the complaint is not dispositive of whether the case involves an action or proceeding against the debtor." *Parker v. Bain*, 68 F.3d 1131, 1137 (9th Cir. 1995). Instead, the claims and parties "must be disaggregated so that particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *Id.* (quoting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-06 (3d Cir. 1992)). We must analyze "whether, at its inception, the claim was 'against the debtor'; one must not look at who most recently prevailed at any subsequent point[.]" *In re Mid-City Parking, Inc.*, 332 B.R. 798, 806-07 (Bankr. N.D. Ill. 2005).

KAH's cross-claims against Ditech sought a declaration that title to the Property was vested in KAH free and clear of all liens and encumbrances and that "counterdefendants," including Ditech, had no estate, right, title, or interest in the Property. It was KAH, not Ditech, which initially sought a determination of the validity of Ditech's interest in the Property. Ditech's counterclaims sought to quiet title and for a declaration that it was the holder of a first position deed of trust on the Property as against all other claimants, including KAH. Those counterclaims were the mirror image of KAH's claims against Ditech; as such, Ditech's motion for

12

summary judgment sought resolution of the identical issues raised in KAH's cross-claims. Under a common sense interpretation of the DC Order, Ditech's counterclaims were in substance a **defense** to KAH's assertion that Ditech had no interest in the Property. *See* Civil Rule 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."). Those counterclaims never would have been filed but for KAH bringing Ditech into the litigation by filing its cross-complaint. And as discussed in our analysis of § 362(a)(3), the status quo was that Ditech's interest was of record. Accordingly, all Ditech was doing was defending its lien against KAH's attack.

When the District Court granted summary judgment in favor of Ditech on its counterclaims, it simultaneously disposed of KAH's cross-claims:

> [T]he Court grants summary judgment in favor of Ditech and declares that the Federal Foreclosure Bar prevented the foreclosure sale from extinguishing Fannie Mae's interest in the property. The Court finds this holding to be decisive as to all claims in this matter and dismisses the remaining claims as a result.

Those claims included KAH's cross-claims against Ditech. As a result, the DC Order did not violate § 362(a)(1) even though it disposed of Ditech's counterclaims against KAH.

13

Our conclusion is limited to the unique facts of this case. Here, none of the policy reasons for § 362(a)'s stay of litigation against a debtor are implicated. The entry of the DC Order did not diminish the estate, nor did it unfairly benefit one creditor over another.[6] Under these circumstances, § 362(a)(1) is simply not implicated.

### 2. Entry of the DC Order did not violate § 362(a)(3) because it did not change the status quo.

Under § 362(a)(3), the stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" Acts that simply maintain the status quo do not violate the automatic stay. *Fulton*, 141 S. Ct. at 590. In *Fulton*, the Supreme Court held that the City of Chicago did not exercise control over property of the estate in violation of the stay when it retained possession of debtors' impounded vehicles post-petition. *Id.* at 589-90. According to the Court, "the language of § 362(a)(3) implies that something more than merely retaining power is required to violate the disputed provision." *Id.* at 590. Instead, § 362(a)(3) "prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *Id.* Here, Shellpoint's lien existed as of the petition date, and the DC Order simply affirmed the validity of the existing lien. It did not affect

---

[6] Censo's schedules, which were not filed until December 2019, include Shellpoint's secured claim encumbering the Property. That claim is characterized as contingent and disputed based not on the theory that the first position lien had been extinguished, but on "wrong address and legal description on Note and Deed of Trust."

14

KAH's possession or control of the Property. The DC Order thus did not disturb the status quo and did not violate § 362(a)(3).

### 3. Entry of the DC Order did not violate §§ 362(a)(4) or (a)(5) because it was not an act to create, perfect, or enforce a lien.

Sections 362(a)(4) and (a)(5) provide that the stay applies to any act to create, perfect, or enforce a lien against property of the estate or property of the debtor, if the lien secures a pre-petition claim. Censo offers absolutely no factual or legal basis to conclude that the DC Order violated the automatic stay under this subsection. KAH's cross-claims initiated the dispute over the existence of the lien and thus cannot be construed as an act to create, perfect, or enforce a lien, and Ditech defended the cross-claims with its counterclaims. As discussed, the DC Order simultaneously disposed of all claims in the lawsuit, including KAH's cross-claims. We note that when Shellpoint wanted to enforce its deed of trust, it obtained an order from the bankruptcy court granting relief from stay.

One of the lessons of *Fulton* is that not every post-petition act or omission that could conceivably affect property of the debtor or the estate is a stay violation. A debtor cannot simply proclaim a stay violation but must carefully analyze and apply the specific subsection of § 362(a). Censo has utterly failed in that regard. We conclude that the DC Order is not void as a violation of the automatic stay.[7]

---

[7] In any event, the bankruptcy court has the power to enter an order retroactively lifting the stay if appropriate. *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (9th Cir. BAP 2003).

**D. Censo has waived any argument that the other elements of claim preclusion were not met.**

Censo has abandoned its arguments that the other elements of claim preclusion are not met and that it adequately pleaded its causes of action. Accordingly, those arguments are waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). The bankruptcy court did not err in granting the motion to dismiss.

**E. The bankruptcy court did not abuse its discretion in denying leave to amend.**

Although Censo did not request leave to amend, the bankruptcy court correctly considered whether any amendment could cure the deficiencies of the complaint. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (directing that "a [trial] court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts").

Leave to amend is to be freely given. *See* Civil Rule 15; *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 503 B.R. 804, 814 (9th Cir. BAP 2014), *aff'd*, 836 F.3d 1146 (9th Cir. 2016). At the same time, if the bankruptcy court determines that amendment would be futile, it must dismiss the complaint with prejudice. *Id.* at 815.

Given the bankruptcy court's finding that claim preclusion barred the requested relief, amendment would have been futile. Thus, the court did not abuse its discretion in denying leave to amend. Censo nevertheless

requests that, if the Panel disagrees that the DC Order is void, we should remand with instructions to permit Censo to amend its complaint. Censo does not seem to grasp that if the Panel finds the DC Order valid, claim preclusion applies to bar any claim that Shellpoint's lien is **not** valid. Censo states that there are claims available in bankruptcy that could not have been brought in the district court litigation, but except for the conclusory statement that "it is possible that amended claims are available," Censo articulates no plausible claim that it could assert in an amended complaint.

## CONCLUSION

For these reasons, the bankruptcy court did not err in granting the motion to dismiss without leave to amend. We AFFIRM.[8]

---

[8] The day before oral argument in this appeal, Censo's counsel filed a letter attaching a copy of the Nevada Supreme Court's recent decision in *U.S. Bank, N.A. v. Thunder Properties, Inc.*, 503 P.3d 299 (Nev. 2022). There, the court addressed questions certified to it by the Ninth Circuit Court of Appeals regarding what statute of limitations applies to a lienholder's claim for declaratory relief that its lien was not extinguished by an HOA foreclosure sale. The court held that such a claim is governed by the four-year statute of limitations of Nevada Revised Statutes § 11.220, but the limitations period in that case was not triggered solely by the HOA foreclosure sale. Censo suggests that, based on this authority, if the Panel agrees that the DC Order is void, Shellpoint is not necessarily time-barred from obtaining a declaratory judgment regarding the validity of its lien. We express no opinion on the impact of this case.

17