**In re Victoria M. PERALTA, Debtor.**

**Larry Morris, dba Morris Motors, Appellant,**

**v.**

**Victoria M. Peralta, Appellee.**

**BAP. No. AZ–03–1619–KSB.**
**Bankruptcy No. 02–15447–GBN.**
**Adversary No. 03–00072–GBN.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 21, 2004.

Filed Nov. 8, 2004.

Larry Morris, Scottsdale, AZ, Pro se Appellant.

Ronald J. Ellett, Ellett Law Offices, P.C., Phoenix, AZ, for Victoria M. Peralta.

Before KLEIN, SMITH, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

Appellant took a hard-line approach to the bankruptcy automatic stay after he repossessed the chapter 13 debtor's vehicle: he insisted that the debtor prove a bankruptcy case was pending before he would return her vehicle and then quibbled for several days that the proof was not sufficiently official. Now he complains that the debtor did get something official: a $2,249.50 default judgment for willful stay violation.

We reject appellant's contention that service of a summons and complaint by first-class mail was inadequate to establish personal jurisdiction and AFFIRM the court's refusal to grant relief from the default judgment.

## FACTS

Victoria Peralta, a divorced working mother of seven, filed a chapter 13 case on September 27, 2002, scheduling appellant Larry Morris's dba "Morris Motors" as a secured creditor.

On January 25, 2003, Morris repossessed Peralta's 1991 Ford Explorer in violation of the automatic stay and did not honor demands for its return until January 29, 2003.

By the time Morris was persuaded to release the vehicle, he and Peralta's counsel, Ronald Ellett, had exchanged five salvos of faxed letters and the adversary proceeding for stay-violation damages that is the subject of this appeal had been filed.

Not until the morning of January 27, did Morris respond to telephone messages left by Ellett during the previous two days, at which time Morris asserted he "did not know" of the bankruptcy and asked Ellett to "fax me a copy of the filings."

Ellett faxed Morris a copy of Peralta's Schedule D, showing the case name and number (*In re Victoria M. Peralta*, Case No. 02–15447–PHX–GBN) at the top, at 12:00 p.m. on January 27, with a cover letter stating that the schedules were filed October 15, 2002. That was not enough for Morris.

Morris responded with a fax to Ellett expressing doubt about the existence of the bankruptcy, claiming he had no notice of the bankruptcy, and suggesting that a

384

court order would be needed.[1]

Ellett responded by faxing a copy of Peralta's Voluntary Petition (on the face of which appeared the clerk's stamps showing receipt and Case No. 02–15447–PHX–GBN) and a copy of the receipt for payment of the filing fee. The cover letter notified Morris he was exposing himself to stay-violation damages. That was not enough for Morris.

Morris responded on the morning of January 28 with another letter refusing to release the vehicle without verification of the bankruptcy case's existence by a judge.[2]

Next, Ellett filed a Complaint for Violation of the Automatic Stay and, within the adversary proceeding, a Motion to Compel Turnover of the vehicle, requesting an expedited hearing on the motion. He faxed Morris a copy of the complaint at 10:27 a.m. and a copy of the motion at 11:02 a.m. on January 28. That was not enough for Morris.

Ellett then faxed Morris a letter at 11:35 a.m. on January 28 asserting again that

Morris' refusal to return the vehicle was a willful stay violation and announcing that the complaint had been filed, as well as the Motion to Compel Turnover. That was not enough for Morris.

Morris then faxed his second January 28 letter repeating that he had no prior notice of the bankruptcy and demanding "official paperwork" or the name of a judge that he could call.[3]

Ellett faxed a response to Morris at 1:21 p.m., explaining that judges do not talk with litigants, the automatic stay binds everybody, and that it was time to "stop your games and release my client's car at once." That was not enough for Morris.

Morris responded with his third and fourth letters of January 28 in which he continued to demand proof that a bankruptcy case had been filed and reiterated his doubt that a bankruptcy case existed for Peralta.[4]

Meanwhile the court entered an order setting a hearing on the Motion to Compel Turnover for February 3.

1. The pertinent portion of the Morris letter is:
 . . . To date I only received a Schedule D, which does nothing to prove a filing of a bankruptcy procedure. I have nothing from the courts to support your claims.
 I will assume your failure to provide such documents only means no such documents exist.
 Please set up a court date or give me a judge to call and I will be happy to cooperated [sic] with whatever the rulings are.
 Morris–Ellett Letter, January 27, 2003.

2. Morris wrote: "If you can provide me with the Judge to call to verify your claims, then I will follow his instructions." Morris–Ellett Letter # 1, January 28, 2003.

3. The pertinent portion of Morris' letter is:
 4) . . . All I ask for is the official paperwork. . . .
 5) I asked you for a Judge's name so I could call and verify your story. Again, nothing from you. . . .
 Morris–Ellett Letter # 2, January 28, 2003.

4. Pertinent portions of these Morris letters are:
 I have explained to you "repeatedly" that I need to see the filed copy of the bankruptcy. Since I NEVER RECEIVED ANY NOTICES, I only have your word that your client even filed for such protection. I have had clients in the past [who] have "lawyer friends" write letters or even used phony letterhead to write their own letters.
 So ONCE AGAIN I am requesting you send me proof of such a filing and not some unsigned unfilled [sic] schedule. If I have such proof or I can make a phone call to verify such proof then your client can have the car back.
 Morris–Ellett Letter # 3, January 28, 2003.
 . . . WHY DON'T YOU SEND DOCUMENTS TO PROVE THE BANKRUPTCY CASE WAS ACTUALLY FILED? ? ? ? ? ?
 Morris–Ellett Letter # 4, January 28, 2003.

Ellett faxed Morris a letter at 3:01 p.m. responding to the final two January 28 letters. He notified Morris again of the adversary proceeding and rejected Morris' suggestion that it might be a "fake bankruptcy." Morris was being worn down.

The denouement came when Morris responded with a faxed letter on January 29 reporting that he had called the local chapter 13 trustee, who confirmed that Peralta had a pending chapter 13 case. Accordingly, Morris would release the vehicle.

Once Morris released the vehicle, the court vacated, at Ellett's request, the order setting the February 3 hearing.

The summons and complaint were served February 4, 2003 on Morris by first-class mail addressed to 9420 E. Doubletree Ranch Rd., Unit 101, Scottsdale, AZ 83258, which address Morris (who used zip code 83259 in faxes to Ellett) concedes is correct.

No answer to the complaint having been filed by April 3, Morris' default was entered, followed by a July 21 default judgment for $2,249.50 ($2,099.50 actual damages; $150.00 costs), which sum reflected Ellett's fees for less than eight hours at the rate specified in his contract with Peralta.

The default judgment was entered on docket on August 6, notice of which was mailed to Morris at the same address at which the summons and complaint were served.

Morris attended a September 22 status conference that the court had set at its July 21 hearing. When he complained about the judgment, the court suggested he file a motion or appeal.

Morris asserted in his "Motion for Reconsideration," filed September 26, that he was unaware that a complaint had been filed against him because he was having trouble receiving his mail at the address he concedes to have been correct.

The court denied the motion, which it treated as seeking relief from the default judgment under Federal Rule of Civil Procedure 60(b). Morris appealed.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUE

1. Whether service of process on defendant was effective to establish personal jurisdiction.

2. Whether relief from default judgment was warranted under Federal Rule of Civil Procedure 60(b)(1).

## STANDARD OF REVIEW

 Whether a judgment is void for lack of personal jurisdiction is reviewed de novo. *Elec. Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 311 (9th Cir.1992). Questions of relief under Federal Rule of Civil Procedure 60(b)(1) from a default judgment are reviewed for abuse of discretion. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir.2000); *Determan v. Sandoval (In re Sandoval)*, 186 B.R. 490, 493 (9th Cir. BAP 1995).

## DISCUSSION

The bankruptcy court was presented with a pro se litigant's generic "motion for reconsideration" that did not specifically invoke any of the several rules of procedure upon which it might be based, which motion it construed as seeking relief from judgment under Federal Rule of Civil Procedure 60(b). This was an appropriate exercise of the court's obligation to construe the rules to "secure the just, speedy,

and inexpensive determination" of the matter. FED. R. BANKR. P. 1001.

Although the court dealt with the heart of the matter in a craftsman-like manner, Morris' arguments in this appeal warrant a somewhat finer point on the pencil. Hence, we start by focusing on service of process before turning to the standards for relief from default judgment and for vacating default.

## I

Morris says that he did not receive the summons and complaint that were served by first-class mail and argues that he should have been served either by personal delivery or certified mail. The import of these points, if accepted, would render the default judgment void for lack of personal jurisdiction.

■ The plaintiff has the burden of establishing personal jurisdiction. Specifically, the plaintiff bears the burden of proof regarding the facts essential to the acquisition of personal jurisdiction and bears the burden of persuasion with respect to the legal consequence of the underlying jurisdictional facts. *Goodson v. Rowland (In re Pintlar Corp.)*, 133 F.3d 1141, 1144 (9th Cir.1998).

Service by first-class mail postage prepaid "to the place where the individual regularly conducts a business or profession" is specifically authorized by the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 7004(b)(1).

Service of a summons in accordance with Rule 7004(b) "is effective to establish personal jurisdiction over the person of any defendant with respect to a . . . civil proceeding arising under the Code," so long as the exercise of jurisdiction is consistent with the Constitution and laws of the United States. FED. R. BANKR. P. 7004(f).

In view of the centrality of the automatic stay to the viability of the bankruptcy system, a stay-enforcement proceeding in the district in which the bankruptcy case is pending and where all parties are located and all actions occur is, beyond peradventure, consistent with the Constitution and laws of the United States. *Cf. Pintlar Corp.*, 133 F.3d at 1145–46; 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.50[2][b][I] (3d ed. 2004) ("MOORE'S").

■ The mailing of a properly addressed and stamped item creates a rebuttable presumption that the addressee received it. *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 207 (9th Cir. 1991). A certificate of mailing raises the presumption that the documents sent were properly mailed and received. *Id.; Cossio v. Cate. (In re Cossio)*, 163 B.R. 150, 155 (9th Cir. BAP 1994), *aff'd mem.*, 56 F.3d 70 (9th Cir.1995).

■ These evidentiary presumptions suffice to establish the prima facie case that satisfies a plaintiff's burden to establish personal jurisdiction.

These presumptions are, of course, rebuttable presumptions that do not shift the plaintiff's ultimate burden to establish the existence of personal jurisdiction. FED. R. EVID. 301. Rebuttal, however, requires clear and convincing evidence. *Bucknum*, 951 F.2d at 207.

The bankruptcy court found that appellant did not meet the clear and convincing rebuttal standard. The tenor of the court's analysis indicates that it disbelieved Morris in that respect.[5]

---

5. The court's candid oral ruling supports its result even if the standard were to be preponderance of the evidence:

> If as [Morris] discusses in his motion, his business records were stored in boxes, that's, to put it bluntly, his problem. That

The record is consistent with the court's incredulity. The address that Ellett used to serve the summons and complaint by mail was the same address Morris concedes to have been correct. Morris admits to having received at that address the motion to vacate the February 4 hearing and the notice of the September 22 status conference. It is the same address that Morris used on his motion for reconsideration and that he has used in his appellate papers.

The dubious assertion that Ellett knew that the handling of the mail at Morris' business address was confused, does not connote knowledge that "ordinarily employed means of notice will be ineffectual" in a manner that might warrant relief on a theory it was not "reasonably calculated, under all the circumstances, to apprise" the addressee of the opportunity to object. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); RESTATEMENT (2D) OF JUDGMENTS § 2(2).[6] It cannot be said that mail directed to Morris' actual address (that he is still using in this appeal), is not reasonably calculated to reach him.

Although Morris may have closed his used car lot, the facts reveal that the address nevertheless qualified as the place where Morris "regularly conduct[ed] a business" for purposes of Rule 7004(b)(1). He continued to engage in commerce at

least to the extent of causing vehicles to be repossessed and continued holding himself out in such dealings as using that business address. He plainly did not carry his rebuttal burden of demonstrating that mail to him at that address would be unlikely to come to his attention.

Nor can Morris credibly assert that he had no actual notice of the adversary proceeding. The salvos that Morris exchanged with Ellett during the battle over the vehicle prove that Morris knew he was being sued for damages that might be measured by Ellett's professional fees. This knowledge makes it equally plausible that Morris chose to ignore mail that arrived from Ellett. *See Belford v. Martin-Trigona (In re Martin-Trigona)*, 763 F.2d 503, 505–06 (2d Cir.1985).

Thus, Peralta carried her burden to demonstrate that service of the summons and complaint by first-class mail postage prepaid in accordance with Rule 7004(b)(1) was effective to establish personal jurisdiction over Morris, who also had actual knowledge of the complaint. It follows that there is no jurisdictional defect in the default judgment.

## II

The question of whether relief from the default judgment should be afforded under Federal Rule of Civil Procedure 60(b)(1)[7] entailed an exercise of discretion

is not [Peralta's] problem. [Morris] provided very little evidence to suggest that sending official business correspondence by regular mail was insufficient notice to him. Tr., Nov. 4, 2003, at p. 26.

**6.** The *Restatement* articulates a rule implicit in *Mullane*:

(2) If the party responsible for effectuating notice knows that the person to be notified is so situated or is in such condition that ordinarily employed means of notice will be ineffectual, other means must be used that actually notify, or have a reason-

able certainty of resulting in actual notice to, the person or someone who can adequately represent him.
RESTATEMENT (2D) OF JUDGMENTS § 2(2).

*Mullane* requires: "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652.

**7.** Rule 60(b)(1) provides:

(b) On motion and upon such terms as are just, the court may relieve a party or a

by the bankruptcy court that we can unsettle only if the court did not apply correct law or rested its decision on a clearly erroneous finding of material fact. *Bateman,* 231 F.3d at 1223.

## A

Default judgments are construed under Rule 60(b) subject to two constraints. First, Rule 60(b) is remedial in nature and liberally applied. Second, the policy favoring deciding cases on the merits means that "the finality interest should give way fairly readily" to the merits. *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 696 (9th Cir.2001) ("*TCI* "); *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984); *see generally* 10 MOORE'S § 55.50[2]; 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D §§ 2694–96 (3d ed. 1998) ("WRIGHT & MILLER").

## B

The three factors to consider with respect to vacating a default judgment are: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. *TCI,* 244 F.3d at 695–96; *Falk,* 739 F.2d at 463.

These factors are derived from the "good cause" standard for vacating defaults. Fed.R.Civ.P. 55(c); *TCI,* 244 F.3d at 696.[8]

The party seeking relief from a default judgment bears the burden of demonstrating that these factors militate in favor of vacating the judgment. *TCI,* 244 F.3d at 696; *Cassidy v. Tenorio,* 856 F.2d 1412, 1415 (9th Cir.1988).

### 1

The concept of the defendant's "culpability" is construed to be consistent with the Supreme Court's definition of "excusable neglect" in the context of retroactive extensions of time under rules of procedure. *TCI,* 244 F.3d at 696.

The embedded concept of excusable neglect is equitable and entails such considerations as "prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (Fed. R. Bankr.P. 9006); *TCI,* 244 F.3d at 696 (Fed. R.Civ.P. 60(b)); *Nunez v. Nunez (In re Nunez),* 196 B.R. 150, 157 (9th Cir. BAP 1996) (Fed.R.Civ.P. 60(b)).

Since the burden of proof is on Morris, as movant, we agree with the bankruptcy court that Morris did not establish that he

---

party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;

FED. R CIV. P. 60(b)(1), *incorporated by* FED. R. BANKR P. 9024.

8. Rule 55(c) provides:
(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

FED. R. CIV. P. 55(c), *incorporated by* FED. R. BANKR. P. 7055.

While the analysis of whether to vacate a default judgment is derived from the Rule 55(c) "good cause" standard for vacating a default, the concepts are distinct. Thus, it may be possible to reopen a judgment for the purposes of reassessing damages without disturbing a default addressed to liability. *See Haw. Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir.1986); 10A WRIGHT & MILLER § 2694; 10 MOORE'S § 55.50[1][a].

was free of culpability or that his neglect was excusable. The address used for service by mail was concededly correct and has proved to be accurate for other papers in the adversary proceeding (and in this appeal). The extent of the "trouble" he says he was having with mail at that address was not so much as to cause him to change his address and must have been largely within his control. The court's incredulity also suggests that considerations of good faith do not militate against culpability.

2

Nor did Morris demonstrate that he would be able to present a meritorious defense if relief were to be granted. The analysis of the merits of defenses has two facets: liability and damages.

Morris' liability for the violation of the automatic stay is clear. The stay unambiguously protected Peralta's vehicle; none of the statutory exceptions to the stay arguably applied.

■■■ Since the automatic stay is effective against the world, regardless of notice, acts in violation of the stay are automatically void ab initio. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572–74 (9th Cir.1992).

Thus, Morris' theory that he was entitled to insist on receiving formal notice of the bankruptcy from the court is simply wrong. Morris repossessed Peralta's vehicle without having obtained relief from stay. Regardless of notice, it is an open and shut case on stay-violation liability: there can be no meritorious defense.

As to damages (or any remedy other than automatic voidness), the question whether there is a meritorious defense is more fact-intensive, with a focus on "willfulness." Morris' protestation that he had not received notice of the filing of the bankruptcy case, which would tend to negate willfulness, lost its merit the moment he chose to start quibbling and refused to return the vehicle immediately upon being told about the bankruptcy.

The question, then, is whether there might be a meritorious defense to the award of damages based on less than eight hours of professional services, at the rate established by Peralta's contract with Ellett, incurred in the effort needed to overcome Morris' resistance to returning the vehicle after Ellett told him that a bankruptcy case existed, which is the point at which Ellett turned on the damages meter.

■■■ It is settled that the "willfulness test" for automatic stay violations merely requires that: (1) the creditor know of the automatic stay; and (2) the actions that violate the stay be intentional. *Eskanos & Adler v. Leetien*, 309 F.3d 1210, 1215 (9th Cir.2002); *Associated Credit Servs., Inc. v. Campion (In re Campion)*, 294 B.R. 313, 316 (9th Cir. BAP 2003). No specific intent is required; a good faith belief that the stay is not being violated "is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Johnston Envt'l Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir.1993); *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 482 (9th Cir. 1989); *Campion*, 294 B.R. at 316.

There was no merit to Morris' insistence on better proof of the existence of the bankruptcy before he can be charged with willfulness. Morris received the case name and docket number in Ellett's first response to his request for information, and he could have confirmed the filing of the case with a telephone call to the court. Hence, resistance was at Morris' peril.

Damages measured by the professional fees incurred in wrestling with Morris were plainly appropriate and reasonable in amount. Indeed, if there is anything re-

markable about the damages, it is that the court did not consider awarding punitive damages.

In short, there is no meritorious defense to liability or damages.

### 3

The final inquiry is whether reopening the judgment would prejudice the plaintiff, to which the answer is plainly in the affirmative. Forcing Peralta and her counsel to invest the expense of further time to deal with defenses that appear to lack merit would serve no purpose, other than to increase the potential award against Morris (whose credit risk is uncertain).

We thus agree with the bankruptcy court that Morris did not carry his burden to demonstrate that the particular factors favor relief from the default judgment.

## CONCLUSION

The bankruptcy court's order denying appellant's motion for relief from the default judgment is AFFIRMED.