**In re Gary L. OZENNE, Debtor.**

**Gary L. Ozenne, Appellant,**

**v.**

**Sandra L. Bendon, Trustee; Dollar Storage; Mike Ozenne, Executor for the Estate of Pearl Ozenne; Stephen C. Duringer, Appellees.**

**BAP No. CC–04–1456–BMoH.**
**Bankruptcy No. RS 04–18301–MJ.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 19, 2005 at Los Angeles, California.

Filed—Jan. 17, 2006.

Gary L. Ozenne, Hemet, CA, pro se.

Sandra L. Bendon, trustee, Tustin, CA, pro se.

Ron Doty, Hemet, CA, pro se.

Stephen C. Duringer, Irvine, CA, pro se.

Before: BRANDT, MONTALI, and HAINES,[1] Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Gary Ozenne filed a chapter 7[2] petition to forestall the scheduled sale of the contents of a mini-storage unit for delinquent rent, and advised the storage operator. The operator nevertheless sold his personal property at an auction the next day. Ozenne moved for sanctions for violation of the stay. The bankruptcy court denied that motion, concluding that because state law was unclear, the stay violation was not willful. Debtor appealed.

As the bankruptcy court applied an incorrect legal standard in reaching its conclusion, we REVERSE and REMAND.

## I. FACTS

In early 2003, Ozenne moved his personal and business property (the "Property") into storage units # 329 and # 462 at Dollar Self Storage # 3, 205 N. Lincoln, in Corona, California ("Dollar"). After he fell several months behind on his rent, in April 2004 Dollar served a three-day pay or quit notice under CCP § 1161. It apparently commenced a state court unlawful

---

1. Hon. Randolph J. Haines, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, as the case from which this appeal arises was filed before its effective date (generally 17 October 2005). Section 362(h), as it was previously codified, is now largely codified as § 362(k)(1). All "Rule" references are to the Federal Rules of Bankruptcy Procedure; "FRCP," to the Federal Rules of Civil Procedure; and "FRE," to the Federal Rules of Evidence. "CCC" references are to the California Civil Code and "CCP" references are to the California Code of Civil Procedure.

detainer action, and obtained a default judgment in May 2004, awarding Dollar possession of the storage units, money damages, and ordering a sheriff's lock-out.

Approximately one week prepetition, Dollar wrote Ozenne a letter informing him that that it had run the statutory newspaper notifications and intended to proceed with a sale of the Property. Ozenne tried to work out a repayment arrangement, and on 9 July tendered to Dollar $999 toward the judgment and retrieved some of the contents of the small storage unit. But Dollar demanded full payment of the $2900 owing (including late fees and legal fees) for the larger unit.

To stop the sale of the contents of that unit, Ozenne, d/b/a Residential Fire Sprinklers, filed a chapter 7 petition on 14 July 2004, indicating that the Property was located in Dollar's storage units. He personally delivered a copy of the petition to Dollar's manager the same day.

Without seeking relief from the automatic stay, Dollar proceeded with the scheduled auction the next day. In his 20 July 2004 letter to Ozenne, Dollar's manager explained:

> This letter is to inform you that storage unit # 329 was sold at public auction on Thursday, July 15, 2004. The attorneys representing our owners, Stadium Properties, reviewed the application for bankruptcy you delivered to Dollar Self Storage # 3 on July 14th. I was instructed to proceed with the sale of unit # 329 based on their review.

Meanwhile, Ozenne filed his schedules; on his personal property schedule he listed the Property and valued it at $55,000. He also scheduled Dollar having a storage lien claim of "$>60,000," and listed in his statement of financial affairs Dollar's "seizure" of tools, materials, cash, inventories, furnishings, appliances, and computers with a total value of $67,000. Ozenne claimed a personal property exemption under CCP § 704.020 et seq.; it is unclear how much of the exempt property was in the storage units.

Ozenne sought a determination that the sale was void as a stay violation, citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992), and moved for an order staying the resale of the Property and for sanctions against Dollar. Dollar, represented by counsel, responded that it should have been named as "Corona Lincoln Partners, LLC d/b/a Dollar Self Storage," but did not argue insufficiency of process or lack of personal jurisdiction. Dollar denied that it violated § 362, arguing that the automatic stay was not in effect because, under state law, Ozenne had abandoned the Property prepetition. It did not seek annulment of the stay to validate the sale.

The bankruptcy court concluded that the stay had been violated because Ozenne had up until the time of sale to reclaim the Property. However, the court found the stay violation was not willful because "the law is far from crystal clear as to who owned the property" and the "appropriate remedy is to find a mechanism by which the net proceeds from the sale are returned to essentially Mr. Ozenne or the trustee." Transcript, 1 September 2004 at 15. The bankruptcy court's minute entry regarding the motion states "granted in part. Lessor to provide account and check."

Ozenne appealed. In response to our preliminary determination that the minute order was interlocutory, the bankruptcy court entered its Order on Motion for Damages and Sanctions on 7 July 2005, which provided:

> 1. The landlord's sale [of the contents of storage unit # 329] was a violation of the automatic stay.

2. The violation was not willful because of the lack of clarity of California law. No sanctions will be awarded.

3. Creditor Corona Lincoln Partners shall tender to the chapter 7 trustee a check which represents the net proceeds from the sale, as determined by an accounting from the auctioneer and creditor.

No appellee filed a brief or argued.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(G). We do under 28 U.S.C. § 158(c).

## III. ISSUES

A. Whether the bankruptcy court clearly erred in finding that Dollar's post petition sale of the Property was not a willful violation of § 362; and, if so,

B. Whether the bankruptcy court abused its discretion in denying Debtor's motion for damages under § 362(h).

## IV. STANDARDS OF REVIEW

■ We review conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code and Rules, de novo. *In re Staffer,* 262 B.R. 80, 82 (9th Cir. BAP 2001), *aff'd,* 306 F.3d 967 (9th Cir.2002).

■ We review whether a creditor willfully violated the automatic stay as a question of fact for clear error. *In re Campion,* 294 B.R. 313, 315 (9th Cir. BAP2003); *Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210, 1213 (9th Cir.2002). And "[w]e may regard a finding of fact as clearly erroneous not only if it is without adequate evidentiary support, but also if it was induced by an erroneous view of the law." *Power v. Union Pac. R.R. Co.,* 655 F.2d 1380, 1382–83 (9th Cir.1981) (citations

omitted). *See also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("If a district court's findings rest on an erroneous view of the law, they may be set aside on that basis. *Pullman–Standard v. Swint,* [456 U.S. 273, 287, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)]").

■ We review the bankruptcy court's assessment of damages under § 362(h) for abuse of discretion. *In re Roberts,* 175 B.R. 339, 343 (9th Cir. BAP 1994); *In re Roman,* 283 B.R. 1, 7 (9th Cir. BAP 2002). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. 2447.

## V. DISCUSSION

■ Preliminarily, we must determine whether we have an adequate record for appellate review. *In re Massoud,* 248 B.R. 160, 163 (9th Cir. BAP 2000). Ozenne has barely met his burden of presenting a proper record. *In re Kritt,* 190 B.R. 382, 387 (9th Cir. BAP 1995).

■ We make reasonable allowance for pro se litigants and construe their papers liberally, *In re Kashani,* 190 B.R. 875, 883 (9th Cir. BAP 1995), and will exercise our discretion to examine what record has been provided. We do have the schedules and take judicial notice of the bankruptcy court's order and of its docket, which indicates the case is closed. FRE Rule 201; *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957–58 (9th Cir.1989). That order contains the critical finding that Dollar violated the stay and the conclusion that the violation was not willful because of the "lack of clarity of California law."

### A. *Stay Violation*

■ The filing of a petition for bankruptcy relief automatically stays both the

continuation of proceedings against the debtor and the commencement of any act to obtain possession of, or enforce a lien against, property of the debtor or of the estate.[3] We look to state law to ascertain what legal and equitable interests the debtor had at the start of the case, and thus determine the extent of "property of the estate" subject to the automatic stay. *Butner v. U.S.,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Lowenschuss,* 170 F.3d 923, 929 (9th Cir.1999).

Generally, collection of a prepetition debt from a debtor/tenant or continuation of any legal action to evict a debtor/tenant is a stay violation. *See In re Williams,* 323 B.R. 691, 699 (9th Cir. BAP 2005)(both possessory interest in residential real property and equitable interest in property under an unrecorded deed were property of the estate); *see also In re Butler,* 271 B.R. 867, 875–76 (Bankr.C.D.Cal.2002) (interpreting CCC § 1006, a debtor/tenant whose lease of residential real property has expired but is still in the premises has an equitable right of possession protected by the automatic stay).

We must consider the state's statutory scheme, which clearly applies to the rental of the storage units, because Dollar falls within the definition of "landlord" under CCC § 1980(a), as an "operator ... of any furnished or unfurnished premises for hire," and Ozenne is a "tenant," which includes a "paying ... lessee ... of any premises for hire." CCC § 1980(e).

After a tenancy is "terminated," the landlord must (if the stored property is believed worth more than $300) give the tenant 15 days' written notice, CCC § 1983(a) and (b), in substantially the following form:

> Unless you pay the reasonable cost of storage for all the above-described property, and take possession of the property which you claim, not later than (insert date ...) this property may be disposed of pursuant to Civil Code Section 1988.

CCC § 1984(a).

A tenant who does not take possession by the date specified in the notice may still claim the personal property, and the landlord must release it, up until the sale:

> Where personal property is not released ... and the notice stated that the personal property would be sold at public sale, *the landlord shall release the personal property to the former tenant if he claims it prior to the time it is sold and pays the reasonable cost of storage, advertising and sale* incurred prior to the time the property is withdrawn from sale.

CCC § 1987(b) (emphasis added). Dollar argued to the bankruptcy court that, after expiration of the 15–day period, Ozenne's failure to pay in accordance with the notice

---

**3.** § 362(a)(1), (3), (4), and (5) provide:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of–

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

.... 

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title ....

was an abandonment by operation of law of his interest in the Property, so it never became "property of the estate" under § 541(a)(1). It cited no authority for this proposition.

Dollar further argued that the landlord has a statutory right to convert the stored property into cash and be reimbursed for the costs incurred in doing so. CCC § 1988. Finally, it relied on another notice provision, which states:

> If you fail to reclaim the property, it will be sold at a public sale after notice of the sale has been given by publication. *You have the right to bid on the property at this sale.* After the property is sold and the cost of storage, advertising, and sale is deducted, the remaining money will be paid over to the county. You may claim the remaining money at any time within one year after the county receives the money.

CCC § 1984(b)(1) (emphasis added). Dollar contended that, if the tenant must bid on the property at the sale, that tenant's ownership interest must logically have already been terminated.

We disagree: CCC §§ 1980–1991 unambiguously preserve the (now former) tenant's ownership interest by providing an exclusive right to cure and claim the personal property at any time up to the sale. Thus, when Ozenne filed his bankruptcy petition, the Property was his, and became property of the estate.[4]

We need not determine whether Dollar's conducting of the sale was the continuation of an action or proceeding against Ozenne (as distinct from the Property) and thus a violation of § 362(a)(1), for its actions transgressed both § 362(a)(3), staying "any act to obtain possession of property of the estate or property from the estate, or to exercise control over property of the estate," and § 362(a)(4), staying "any act to ... enforce [a] lien against property of the estate." Further, to the extent any of the Property was exempt, § 362(a)(5) stays "any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case ...."

### B. *Willful?*

▉ The bankruptcy court correctly concluded that Dollar's actions violated the automatic stay; the dispositive issue is whether the bankruptcy court clearly erred in finding that Dollar did not willfully do so. "[T]he 'willfulness test' for automatic stay violations merely requires that: (1) the creditor know of the automatic stay; and (2) the actions that violate the stay be intentional." *In re Peralta,* 317 B.R. 381, 389 (9th Cir. BAP 2004) (citations omitted); *see also In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir.1992).

▉ Dollar admitted in its 20 July letter that it had received a copy of the face-page filing the day before the sale. Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay. *In re Ramirez,* 183 B.R. 583, 589 (9th Cir. BAP 1995), *appeal dismissed,* 201 F.3d 444 (9th Cir.1999) (table). While notice is relevant to the question of willfulness, it does not matter that Dollar did not receive *formal* notice of the petition from the court. *Peralta,* 317 B.R. at 389.

---

4. Section 541(a)(1) provides:
   The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

▇ Likewise, whether Dollar believed in good faith that it had a right to the Property is irrelevant: "No specific intent is required; a good faith belief that the stay is not being violated 'is not relevant to whether the act was "willful" or whether compensation must be awarded[,]' " *Id.* (citation omitted); *In re Taylor,* 884 F.2d 478, 483 (9th Cir.1989), nor is good faith reliance on the advice of counsel a defense, *Williams,* 323 B.R. at 701; nor is reliance on a state court's determination.

▇ Dollar evinced no concern about the scope of the automatic stay, foregoing any attempt to seek relief from the stay under § 362(d).[5] *See Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421, 1424–25 (9th Cir.1985) (rejecting argument that creditor had unclean hands where it sought relief from automatic stay to validate sale). Dollar did not bother, and a "cavalier approach to the bankruptcy laws [may] subject [a creditor] to serious consequences, even monetary sanctions." *Williams,* 323 B.R. at 701.

And Dollar had an affirmative duty to discontinue its postpetition collection actions: "[a] party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding or risk possible sanctions for willful violations pursuant to § 362(h) . . . ." *Eskanos,* 309 F.3d at 1214; that Dollar's actions were nonjudicial proceedings is no distinction. *See In re Abrams,* 127 B.R. 239, 243 (9th Cir. BAP 1991) (creditor which repossessed a debtor's car post-petition also vio-

lated the stay by failing to take any reasonable steps to remedy its action).

The bankruptcy court found that Dollar's violation of the stay was not willful because of unclear state law. That was an error of law, predicated on the incorrect legal premise that legal uncertainty could transmute Dollar's intentional sale of the Property into something other than a willful violation of the stay, and was clearly erroneous. *See Power,* 655 F.2d at 1382–83 (finding is clearly erroneous if induced by an erroneous view of the law).

Accordingly, we must reverse.

## C. *Damages*

▇ We turn now to § 362(h), which provides:

> An individual injured by any willful violation of a stay by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate cases, may recover punitive damages.

*See also In re Fernandez,* 227 B.R. 174, 180–181 (9th Cir. BAP 1998), *aff'd,* 208 F.3d 220 (9th Cir.2000) (table) (outlining elements of a prima facie case under § 362(h)). Ozenne, representing himself, made no claim for attorneys' fees.

Having erred in determining there was no willfulness, the bankruptcy court abused its discretion in predicating its denial of sanctions on that determination. *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. 2447. And as chapter 7 trustee Sandra Bendon filed her no asset report in Octo-

---

**5.** Which provides:
    On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
        (1) for cause, including the lack of adequate protection of an interest in property of such party in interest,

(2) with respect to a stay or an act against property under subsection (a) of this section, if—
        (A) the debtor does not have equity in such property; and
        (B) such property is not necessary to an effective reorganization . . . [.]

ber 2004 and the bankruptcy case has been closed, the estate's interests in the Property and any claim for damages are abandoned to Ozenne. § 554(c);[6] *In re DeVore,* 223 B.R. 193, 197 (9th Cir. BAP 1998).

We note the obvious connection between Dollar's willful disregard of the automatic stay and Ozenne's injury. Although he does not allege that he incurred damages in any particular amount, nor does he direct us to any supporting evidence in the record, he scheduled the Property's value as $55,000, and noted Dollar's seizure of tools, materials, etc. worth $67,000 in his statement of financial affairs.

Because Ozenne claimed that the Property was "all he had left" and that he suffered from depression after the sale, he may also be entitled to compensatory, punitive, and emotional distress damages. *In re Dawson,* 390 F.3d 1139, 1146–1151 (9th Cir.2004), *cert. denied,* —— U.S. ——, 126 S.Ct. 397, 163 L.Ed.2d 275 (2005) (allowing emotional distress damages under § 362); *In re Johnston,* 321 B.R. 262, 275 (D.Ariz.2005) (discussing damages for willful stay violations).

In any event, we must remand for the determination of his damages. The court's order required Dollar to tender the net proceeds of the sale to the Trustee; nothing in the excerpts of record discloses whether that was ever done. We leave it to the bankruptcy court on remand to determine whether those proceeds, if any, should be factored into the § 362(h) analysis.

## VI. CONCLUSION

Parties enforcing prepetition obligations postpetition without relief from the automatic stay proceed at their peril.

Under state law, the Property was Ozenne's until the moment of sale, and his interest became property of the bankruptcy estate, protected by the automatic stay, the moment he filed his petition. The bankruptcy court's conclusion that Dollar had not willfully violated the stay rested on an erroneous legal premise and thus was clear error. It follows that denying Ozenne's claim for damages was an abuse of discretion.

We REVERSE and REMAND.

---

**6.** Which provides: "Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor ...."