**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

In re:                          )    BAP No. CC-16-1319-LSTa
                                )
GLORIA DEAN WELLS,              )    Bk. No. 2:15-bk-27834-BB
                                )
            Debtors.            )
_____)
MICHAEL GRIFFITH,               )
                                )
            Appellant,          )
                                )
v.                              )    **M E M O R A N D U M***
                                )
GLORIA DEAN WELLS,              )
                                )
            Appellee.           )
_____)

Argued and Submitted on September 29, 2017
at Pasadena, California

Filed - October 10, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding
_____

Appearances:    Appellant Michael Griffith appeared pro se; Barry
R. Wegman argued for Appellee.
_____

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.

---

*This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

After an evidentiary hearing to determine the fair market value of Debtor's residence for purposes of avoiding Appellant Michael Griffith's judgment lien, the bankruptcy court found that the residence was worth $360,000 as of the petition date. On the basis of that valuation, and after deducting consensual liens and Debtor's homestead exemption, the court found that Mr. Griffith's lien impaired Debtor's homestead exemption and entered an order avoiding the lien. On appeal, Mr. Griffith argues that he was denied due process and challenges the bankruptcy court's valuation finding. Having thoroughly reviewed the record, we find no denial of due process or clear error in the bankruptcy court's valuation finding. Accordingly, we AFFIRM.

## FACTS

Debtor Gloria Dean Wells filed her chapter 7[1] petition on November 20, 2015. On Schedule A, Debtor listed her residence on Cherrywood Avenue in Los Angeles (the "Property") with a value of $325,000. On Schedule D, Debtor listed a consensual lien in favor of Chase Bank in the amount of $250,313.99. And on Schedule C, Debtor claimed a homestead exemption of $175,000 under Cal. Civ. Proc. Code § 704.730(a)(3).

About a month later, Debtor filed a motion under § 522(f)(1)(A) (the "Motion") to avoid Mr. Griffith's judgment

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

lien in the amount of $40,527.14.[2]  Debtor's declaration in support of the Motion contained a calculation showing that deducting the consensual lien and homestead exemption from the fair market value of $325,000 left no available non-exempt equity to secure Mr. Griffith's judgment lien.  As evidence of value, Debtor attached to her motion the declaration of appraiser Todd Turner, which authenticated a May 26, 2015 appraisal establishing a fair market value of $325,000.

Mr. Griffith filed an opposition, arguing that the May 26 appraisal was outdated and requesting that a "third party appraisal" be performed before the court ruled on the motion. Mr. Griffith attached to his opposition a comparative market analysis dated January 7, 2016, which estimated the value of the Property at between $617,000 and $645,000.

At the initial hearing, the bankruptcy court, after noting that Mr. Griffith had initially been served at the wrong address, gave him additional time to hire an appraiser to value the Property.  The court continued the matter for a status conference.  Mr. Griffith thereafter filed a declaration and an appraisal performed by Lawrence Walsh dated April 13, 2016, which reflected a fair market value of $505,000.  At the subsequent status conference, the bankruptcy court pointed out to the parties that neither's appraisal was adequate for the court to determine the fair market value of the Property as of the

---

[2]Debtor filed three additional motions to avoid judgment liens against her residence.  None of those lienholders objected to the requested relief, and the court entered orders avoiding those liens.

petition date of November 20, 2015. The court continued the matter again to give the parties time either to hire an agreed-upon independent appraiser or to have their respective appraisers adjust their numbers to reflect the value as of the petition date.

Thereafter, Debtor filed a new declaration from Mr. Turner and a new appraisal as of the petition date, which opined that the Property's value as of that date was $360,000. Mr. Griffith also filed an updated appraisal, supported by Mr. Walsh's declaration, reflecting a petition date value of $470,000.

The bankruptcy court set an evidentiary hearing. At that hearing, both appraisers testified as to their credentials and methodology and were examined by Debtor's counsel, Mr. Griffith, and the court. Both appraisers testified that the Property needed repairs as a result of deferred maintenance. The difference in their respective appraisals appeared to be primarily due to differences in the deductions made for that deferred maintenance. Mr. Turner concluded, based upon a May 2015 inspection, that the Property was in "fair to poor" condition and estimated a cost of $50,000-$100,000 for needed repairs. Mr. Walsh, on the other hand, based on an inspection performed on June 23, 2016, concluded that the Property was in average to fair condition and estimated costs to repair totaling $8,000. Mr. Walsh testified that he did not see all of the damage noted by Mr. Turner and displayed in the color photographs included in Mr. Turner's appraisal: termite damage, dry rot, holes in the ceiling, damage to the kitchen, and leaking pipes.

At the conclusion of testimony, the bankruptcy court found

-4-

that the evidentiary record was sufficient to support Mr. Turner's appraisal and that the Property was worth $360,000 as of the petition date. On the basis of that value, the bankruptcy court concluded that it was appropriate to avoid Mr. Griffith's judicial lien against the Property as impairing Debtor's homestead exemption.

Mr. Griffith timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court denied Mr. Griffith due process.

Whether the bankruptcy court erred in granting Debtor's motion to avoid Mr. Griffith's judgment lien under § 522(f)(1)(A).

**STANDARDS OF REVIEW**

Whether an appellant's due process rights were violated is a question of law that we review de novo. DeLuca v. Seare (In re Seare), 515 B.R. 599, 615 (9th Cir. BAP 2014); see HSBC Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim), 803 F.3d 477, 497 (9th Cir. 2015) ("Whether adequate notice has been given for the purposes of due process is a mixed question of law and fact that we review de novo.").

A fair market value determination is a finding of fact that we review for clear error. Arnold & Baker Farms v. United States (In re Arnold & Baker Farms), 85 F.3d 1415, 1421 (9th Cir. 1996).

-5-

A factual finding is clearly erroneous only if it is illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

## DISCUSSION

Mr. Griffith argues that (i) the bankruptcy court should have dismissed Debtor's case for failure to serve notice of the commencement of the case on Mr. Griffith at his correct address; (ii) the court should have denied Debtor's Motion for the same reason; (iii) the court should have denied the Motion because Debtor's appraisal was outdated; (iv) the court erred in not permitting Debtor to present evidence showing that property values in the relevant neighborhood were increasing; and (v) the court erred in "allowing" a $125,000 adjustment to the value of the Property for costs of rehabilitation.

We make reasonable allowance for pro se litigants and construe their papers liberally. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006). At the same time, we do not ordinarily consider arguments not raised in the trial court sufficiently for the court to have ruled on it. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989). In balancing these principles, we interpret Mr. Griffith's arguments as falling into two categories and will address both of them: first, that Mr. Griffith was denied due process; and second, that the bankruptcy court clearly erred in finding that the Property was worth $360,000.

-6-

**A.   The bankruptcy court did not deny Mr. Griffith due process.**

Generally speaking, a party must receive sufficient notice of any potentially adverse action and the opportunity to be heard.  See Tennant v. Rojas (In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004).  Here, although the Motion and supporting documents were initially served on Mr. Griffith at an incorrect address, Mr. Griffith learned of the bankruptcy filing and Debtor's Motion, filed an opposition to the Motion, and thereafter actively participated in the proceedings.  The record does not reflect that he ever raised inadequate notice as a ground for either dismissal of the bankruptcy case or denial of the Motion.

**1.   Improper notice of bankruptcy filing**

Mr. Griffith argues that the bankruptcy court should have dismissed Debtor's bankruptcy case because Debtor had listed the wrong address for Mr. Griffith on the master mailing matrix.[3] Mr. Griffith alleges that because of this error, he was not notified timely of the § 341 meeting of creditors or the pertinent deadlines and was thus "unable to exercise his fundamental rights in regard to deadlines, timing to seek legal advice, raise objections and . . . obtain competent counsel." Mr. Griffith states that he learned of the bankruptcy filing in early January 2016.

The only matter before us in this appeal is the bankruptcy court's ruling on Debtor's Motion.  As noted, Mr. Griffith did

---

[3]As pointed out by Debtor, the address used for service on Mr. Griffith was the address listed on the abstract of judgment.

not seek relief in the bankruptcy court on grounds of inadequate notice of the bankruptcy case. If Debtor believed he was prejudiced by the lack of this notice, he should have raised the issue before the bankruptcy court. Because he failed to do so, we cannot consider this due process argument on appeal.[4]

## 2. Improper notice of the Motion

Mr. Griffith also argues that because the Motion was initially served at an incorrect address the bankruptcy court should have denied it; he contends that the bankruptcy court lacked personal jurisdiction over him. Again, Mr. Griffith did not raise this issue in the bankruptcy court, and a general appearance or responsive pleading that fails to dispute personal jurisdiction waives any defect in service. Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986), opinion amended, 807 F.2d 1514 (9th Cir. 1987) (citing Civil Rule 12(h), applicable in bankruptcy via Rule 7012). A defendant may also waive the defense as a result of his course of conduct during litigation. Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir. 1998). Here, Mr. Griffith filed an opposition and appeared and participated in all of the hearings on the Motion without raising the issue of personal jurisdiction; he thus waived the issue.

As for due process generally, at the initial hearing, the bankruptcy court acknowledged that Mr. Griffith had not been served at the correct address and continued the hearing to give

---

[4]Mr. Griffith's reply brief in this appeal focuses almost entirely on an argument that Debtor filed her bankruptcy in bad faith, an issue that was never raised before the bankruptcy court.

him time to hire an appraiser. The court continued the hearing two more times to permit the parties to obtain appropriately dated appraisals, after which the court scheduled an evidentiary hearing. At that hearing, Mr. Griffith presented evidence and examined the witnesses. Accordingly, even if we consider the merits of his relevant due process argument, we cannot conclude that Mr. Griffith was deprived of a meaningful opportunity to be heard on the issues relating to the Motion; he was not denied due process or otherwise prejudiced by any error in service. See Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner).

**B.  The bankruptcy court did not clearly err in finding that Debtor's Property was worth $360,000 and consequently granting the Motion.**

**1.  The bankruptcy court did not abuse its discretion in not denying the Motion due to Debtor's submission of an outdated appraisal.**

At the initial status conference on the Motion, the court set a deadline for Mr. Griffith to file an appraisal of the Property and a further status conference. Mr. Griffith was unable to meet the deadline, and two days before it expired, he moved to extend it. He filed his appraisal a few days before the continued status conference, and, at that hearing, the bankruptcy court stated that it intended to continue the hearing to give the court and Debtor's counsel time to review the late-filed appraisal. And noting that neither Debtor's nor Mr. Griffith's appraisal was dated as of the petition date, the court instructed both parties to obtain appraisals as of that date with the hope that the appraisers or the parties could reach an agreement on

value. The court then commented: "But as we sit here today, I don't have a number from either party as of the operative date. So . . . burden of proof is on the debtor[.] [A]s the . . . evidentiary record is now, debtor loses because I don't know what the value was as of November 20."

Mr. Griffith agreed to the continuance without objection. On appeal, however, Mr. Griffith argues that the bankruptcy court abused its discretion in failing to deny the Motion based on Debtor's submission of an outdated appraisal. Again, we need not consider arguments not raised in the trial court. In any event, the decision to continue the matter was within the sound discretion of the bankruptcy court. See Khachikyan v. Hahn (In re Khachikyan), 335 B.R. 121, 125 (9th Cir. BAP 2005) (decisions regarding continuances are reviewed for abuse of discretion). Mr. Griffith has not persuaded us that the court abused this discretion.

**2. The bankruptcy court did not err in denying Mr. Griffith's request to present exhibits to establish that Debtor's appraiser relied on comparable properties outside the relevant area.**

Mr. Griffith argues that the bankruptcy court erred by denying him the opportunity to present certain exhibits at the evidentiary hearing. Mr. Griffith contends that the exhibits showed that property values in the Leimert Park neighborhood, where the Property was located, were increasing but that Turner's appraisal had used one comparable property outside that neighborhood in determining the value of the Property.

At the beginning of the evidentiary hearing, Mr. Griffith asked the court for time to "finish up a few exhibits." The

court refused Mr. Griffith's request, noting that the only exhibits that were to be presented were the appraisals. The court had so stated in its tentative ruling for the June 29 status conference, and Mr. Griffith had not objected or asked to present additional evidence. Later, the court permitted Mr. Griffith to recall Mr. Walsh to the witness stand to ask about the locations of the comparable properties selected by Mr. Turner in his appraisal. Mr. Walsh initially testified that Mr. Turner's appraisal included two comparable properties that were in "inferior" neighborhoods. Further questioning, however, revealed that Mr. Walsh's statement referred to Mr. Turner's initial appraisal rather than the second appraisal dated November 20, 2015. As to the latter appraisal, Mr. Walsh testified that all of the comparables used by Mr. Walsh were located in the Leimert Park neighborhood.

On appeal, Mr. Griffith contends that during Mr. Walsh's testimony, when the court asked Mr. Walsh whether any of the comparables in Mr. Turner's second appraisal were outside the Leimert Park area, the court had covered with her thumb the comparable property that was 1.4 miles outside of the Leimert Park neighborhood. The record does not reflect anything to support Mr. Griffith's assertion, but even if this statement is accurate, Mr. Griffith did not object at the hearing. Moreover, after Mr. Walsh stepped down from the witness stand, the court recalled Mr. Turner for voir dire as to his opinion regarding market appreciation in the relevant area. Mr. Turner testified that while examination of a wide range of comparables in the Leimert Park neighborhood might show appreciation due to

-11-

investors "flipping" some of the homes, overall he believed that the market for homes comparable to the Property was generally stable during the relevant period.

To the extent Mr. Griffith's argument is that the bankruptcy court clearly erred in accepting Mr. Turner's valuation of the Property, Mr. Griffith has not demonstrated that the bankruptcy court's valuation finding is illogical, implausible, or without support in the record. To the contrary, Mr. Turner's appraisal and his explanations for how he reached his conclusions were logical and plausible. Under these circumstances, we cannot reverse the bankruptcy court's factual finding even if we would have decided the matter differently. See United States v. Hinkson, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) ("[T]he scope of our review limits us to determining whether the trial court reached a decision that falls within any of the permissible choices the court could have made.").

### 3. The bankruptcy court did not err in accepting Mr. Turner's adjustment to the Property's value.

Mr. Griffith argues that Mr. Turner's $125,000 deduction from the market value of the Property for deferred maintenance was excessive. We do not find this argument persuasive. First, the $125,000 deduction was not entirely for deferred maintenance: Mr. Turner testified that he had taken a deduction for repairs, but he also took into account the quality of construction, styling, and details of the comparable properties in arriving at his final figure. And second, as discussed above, we are not at liberty to second guess the bankruptcy court's factual findings unless they are illogical, implausible, or without support in the

-12-

record. Mr. Turner's valuation is supported by the evidence, and Mr. Griffith has not convinced us that it was illogical or implausible. Accordingly, we find no error in the bankruptcy court's acceptance of Mr. Turner's opinion of value.

**CONCLUSION**

For the reasons discussed above, we AFFIRM.